Judge Mills
delivered the opinion.
This is a writ of error to reverse an order of the Franklin county court, and the plaintiffs in error, assign errors of fact onlv, and rtdy exclusively upon theca, in the year 1797, the defendant in error obtained leave from said County court, to erect a mili dam, and a grist mill, on South Benson. When the jury, ernpannelled under the writ of ad quod damnum, on the ground then assessing the damiges, by the overflowing of the waters, they determined that the water would not be stagnated higher than certain trees oh the lands of Major, one of the plaintiffs in error, and near to his residence. As it was supposed that it would reach no further up the water course, it was agreed by Major that it might come that high, and no damage should be assessed in hia favor. The dam was erected as proposed. But it was discovered that the stagnation of the water reached considerably above the point contemplated by the parties. Li the year 1819, the present defendant in error, again applied to the coanty court for leave to raise bis dam higher. A writ of ad quod damnum was accordingly awarded, and the jury determined, that, by raising the dam two feet eleven inches higher, than the former order allowed, that one half acre of the land of Francis Major, the plaintiff in error, would be overflowed four months in the year, and that he would sustain damage to the amount of five dollars thereby: that a quarter of an acre of land of William Payne would be overflowed, and thereby he would sustain damage to the amount of ten dollars. The order was made allowing the dam to be raised according to the inquisition; and to reverse this order this writ of error is prosecuted.
It is in proof that the farm or tillable land of Major lies on each side of the stream: that when the water is full, he has to go up the creek a considerable distance, to cross the creek with horses, beyond the limits of his own land, so that the direct communication between the different parts of his farm is wholly cut off, when the water is raised to any considerable height,, by the raising of the dam. That lie has but one permanent spring of water to supply his family, and it is in the bank of the stream opposite to his dwelling on the other side: that in a rise of water the spring *329 Is covered and useless, aud in low water tbe bed of creek is so obstructed by mud and drift, that the passage across is difficult, and nearly impassable: that he has other spring, such as is usually termed a Wet-weather spring on tbe same side of tbe creek on which his dwelling situated, but it goes dry very early in the year. The spring of Payne, tbe plaintiff in error, who lives on the stream nest above Major, is frequently ¡Mandated by tbe rising the waters, and he has on his land no other spring of kind, to furnish water for the use of his family. It ¡s also shewn, on the other side, that the mill with its dam, raised as it now is, is useful and valuable, and that a considerable portion of tbe neighborhood depends upon it for the preparation of their bread: that, although there are other mills in tbe neighborhood, or at no great distance therefrom, yet most of them do not grind so well, and that they are insufficient to supply the neighborhood at all times, and some yvould be compelled to travel a considerable distance, If the mansion-house, offices, gardens, orchards or curtel* ages of any person is affected, the county courts are prohibited from granting leave to build mills. If neither these are to be affected, tbe county court is to take into consideration all other circumstances, and are either to grant or refuse, as they may determine. This shews that none but the mansion-house, offices, gardens, orchards and curtelages are to be, when overflowed, a positive bar against the proceedings, and that all other necessary matters may be destroyed, by the erection of a mill, in cases where public convenience requires it. It is certain that a spring of water designed to supply a family, is not included within these positive prohibitions, aud that they may be subjected to inundation. But it must, at tbe same time, be admitted, that the fountain which supplies pure water for human use, not only as nearly approximates tbe conveniences, which are the subject of positive prohibition, as any other but that it is as necessary and useful, and indeed more so, than some of these prohibited articles. To subject a family to the use of impure water, or even to the necessity of travelling far to obtain it, where it is so frequently indispensable even tor public convenience, ought to be cautiously done by any court, especially when it is recollected, that any damage may be inadequate to compensate the owner for its loss. The need of water is perpetual, and on some farms, no sum may be able to obtain it, after a spring is *330 áesfrótéd. Public convenience, Or rather public necessity* ought imperiously to require a mill, to justify a court in destroying those springs of individuals; the loss of which rimy h'eVé'r be rfcp&ftéd, and the fariris may be, for want of the article of pure water, nearly, or entirely unfit for a family residence.
A . tho’ neoesst ry for family PS8> is n?1 ányUpf the prohibitions leare .*• but'a should never f?‘Te leave *°?s the conse-quenye, un- ™ ®?ses necessity!011*
Bibb for plaintiff, Pope for defendant.
AS the mill, in this instance, is not indispensable, and it rimy exist ánd be useful #1 formerly, under the ancient establishment, we do riot conceive that the circuriistances Warrant the destruction of the springs of the plaintiffs.
The order of the county court of 1819, grahting a new Writ of ád quód damnum, and all subsequent proceedings thereon, must; therefore, be reversed and set aside with costs.